### BROWNING v. VAN RENSSELAER.

(Circuit Court, E. D. Pennsylvania. November 20, 1899.)

LIBEL.—CRITICISM OF BOOK.

To say of a book purporting to show what American citizens are descended from royalty, that it gives no authority for its statements, and that in almost all cases the descendants are proved to be illegitimate, is not libel; the first being within the ordinary scope of literary criticism, and as to the second it being admitted that "some" descents are traced through illegitimates.

Francis G. Taylor, for plaintiff.
J. Rodman Paul, for defendant.

McPHERSON, District Judge. This is an action of libel. The plaintiff avers that he is an expert on matters of genealogy, and the author of many publications on this subject; among them a book entitled "Americans of Royal Descent," which was first published in 1883, and is now in its fourth edition. The language complained of is contained in a letter written by the defendant to a Miss Farnsworth, who appears to have been interested in establishing in America a society to be called the "Order of the Crown." To this society only persons of royal descent were to be admitted, and its portals were to be guarded by Mr. Browning's book. "Amer-

icans of Royal Descent" was to furnish the evidence by which the lineage of aspirants was to be judged. In the letter Mrs. Van Rensselaer declined an invitation to become a member of this somewhat bizarre association, and gave these sensible reasons for declining:

"Firstly. I think the title of this society disrespectful to our ancestors who fought in the war of independence to free this country from a crown; and also think it un-American and unpatriotic.

"Secondly. If the aim of this society is purely social, I cannot agree with you that royal descent will insure distinguished social position in this country."

Another reason was this:

"Thirdly. As I understand this matter, Mr. Browning's book called 'Americans of Royal Descent' is to be the standard of admission to the society. This work quotes no authorities for the statements it contains, but gives lists of people that Mr. Browning declares are descended from monarchs of the Middle Ages, and in almost all cases the descendants are proved to be illegitimate. If I have any such blot on my escutcheon, time has drawn the merciful veil of oblivion over it, and it would be folly for me to be the one to point it out and emphasize it. The only insignia that you could adopt for your society would be the 'Bar Sinister,' and that is hardly one to be proud of."

This paragraph is said to be false and libelous in two particulars: First, because it declares that "this work gives no authorities for the statements it contains"; and, second, because it declares that "in almost all cases the descendants are proved to be illegitimate." In my opinion, neither declaration is legally objectionable. The first is within the ordinary scope of literary criticism, and is not actionable, even if it be untrue. There is no personal reflection upon an author in declaring, even untruly, that he has cited no authority for his statements. It is a matter of common observation that historical writers often give the result of their studies without referring to the sources on which they rely; and even if, in a given case, it were untrue to say that such sources were not specifically referred to, this would not of itself be an attack upon the personal character of the author. Moreover, in the case now in hand, it appears from the plaintiff's statement that there have been several editions of the book in question, and it may well be (as was averred upon the argument of the demurrer, and not denied) that the earlier editions lacked the citations that the later editions may have contained, and that the defendant's criticism was based upon, and was apparently justified by, this deficiency in the early issues.

The second declaration is as unobjectionable as the first. The defendant says that in almost all cases the descendants are proved to be illegitimate, and the plaintiff, in effect, admits this to be true. He formally avers it to be false; but, as he adds immediately, "Wherever the descent is traced through illegitimates, the book contains a statement to that effect," this addition distinctly contradicts the formal averment. He admits that some descents are traced through illegitimates, while the defendant declares that almost all are thus traced. This is a narrow difference, indeed, and wholly insufficient to support a charge of libel.

It is unnecessary to pursue the discussion further. No special damage is set out, and, as the alleged libel is against the book, and

not against the author personally, the failure to aver such damage might of itself be a good reply to the action. But I do not rest the decision on this ground. In my opinion, the letter is not libelous in any particular; and therefore, even if the averment that the defendant furnished a copy of the letter to Town Topics is sufficient,—I think it is insufficient, because it is argumentative and lacks the necessary directness,—this would not strengthen the plaintiff's case. "Americans of Royal Descent" may be highly valued by a limited public, and may be a work of great research, but I am unable to see that the defendant's indifference to its merits has been expressed in such language as the law condemns.

Judgment will be entered for the defendant upon the demurrer.